No. 21-1727

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

KOLU STEVENS;
CLAUDETTE GREENHOE
*Plaintiffs-Appellants*

v.

MICHIGAN STATE COURT ADMINISTRATIVE OFFICE
*Defendant*

and

THOMAS P. BOYD, in his official capacity as Administrator of the
State Court Administrative Office as successor to Milton L. Mack Jr.;

KIM B. MEAD, in his personal capacity and in his official capacity as
Bay County Probate Court Administrator;

WILLIAM M. HEFFERAN, in his personal capacity and in his official
capacity as Antrim County Circuit Court Family Division Administrator
*Defendants - Appellees*

_____

On Appeal from the United States District Court
for the Western District of Michigan – Southern Division
Honorable Paul L. Maloney, District Court Judge

_____

## APPELLANTS' BRIEF

_____

PHILIP L. ELLISON
OUTSIDE LEGAL COUNSEL PLC
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

Attorney for Appellants

## CORPORATE DISCLOSURE STATEMENT

Appellants have no parent corporation and are not a publicly held corporation owning 10% or more of stock of a party. Fed. R. App. P. 26.1(a).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................*iv*

STATEMENT IN REGARDS TO ORAL ARGUMENT..........................*ix*

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF THE ISSUE(S) PRESENTED FOR REVIEW............2

INTRODUCTION.....................................................................................3

FACTS / STATEMENT OF THE CASE ..................................................3

SUMMARY OF ARGUMENT ................................................................13

STANDARD OF REVIEW......................................................................14

ARGUMENT ..........................................................................................15

    I.    The District Court was in error when rejecting First Amendment protections regarding ACRs of Michigan state trial courts' proceedings...............................................18

    II.    Appellants are entitled to an immediate remedy.................24

        A.    An immediate remedy is requested. ...........................24

        B.    Qualified immunity is not available as a defense.......27

        C.    Nominal damages should not be subject to qualified immunity......................................................................27

        D.    Administrators Mead and Hefferan are not entitled to qualified immunity....................................30

RELIEF REQUESTED ...........................................................................33

CERTIFICATE OF COMPLIANCE.......................................................35

CERTIFICATE OF SERVICE................................................................36

*-iii-*

DESIGNATION OF RELEVANT
DISTRICT COURT DOCUMENTS ......................................................37

# TABLE OF AUTHORITIES

### CASES

*Alia v. Mich. Supreme Ct.*,
906 F.2d 1100 (6th Cir. 1990) ........................................................ 4

*Alleghany Corp v. Haase*,
896 F.2d 1046 (7th Cir. 1990) ...................................................... 31

*Anderson v. Creighton*,
483 U.S. 635 (1987) ...................................................................... 30

*Barker v. Goodrich*,
649 F.3d 428 (6th Cir. 2011) ........................................................ 31

*Baxter Int'l, Inc. v. Abbott Labs.*,
297 F.3d 544 (7th Cir. 2002) ........................................................ 32

*Beck v. Hamblen Cnty., Tenn.*,
969 F.3d 592 (6th Cir. 2020) ........................................................ 14

*Brown & Williamson Tobacco Corp v. Fed. Trade Comm'n*,
710 F.2d 1165 (6th Cir. 1983) ................................................. 16, 32

*Courthouse News Service v. Planet*,
947 F.3d 581 (9th Cir. 2020) ........................................................ 16

*Doe v. Pub. Citizen*,
749 F.3d 246 (4th Cir. 2014) .................................................. 15, 16

*Donovan v. FirstCredit, Inc.*,
983 F.3d 246 (6th Cir. 2020) ........................................................ 14

*Eaddy-Bey v. Gosslin*,
860 F.2d 1078 (6th Cir. 1988) ...................................................... 28

*Elrod v. Burns*,
427 U.S. 347 (1976) ...................................................................... 25

*Ex Parte Drawbraugh*,
  2 App.D.C. 404 (1894) ...................................................... 17

*Feathers v. Aey*,
  319 F.3d 843 (6th Cir. 2003) ........................................ 31

*Fisher v. Nissan North America, Inc.*,
  951 F.3d 409 (6th Cir. 2020) ........................................ 14

*Hartford Courant Co. v. Pellegrino*,
  371 F.3d 49 (2nd Cir. 2004) ......................................... 15

*Hope v. Pelzer*,
  536 U.S. 730 (2002) ..................................................... 31

*In re Cont'l Ill. Sec. Litig.*,
  732 F.2d 1302 (7th Cir. 1984) ...................................... 33

*In re Estate of John H. Kuflewski*,
  2016 Mich. App. LEXIS 1668 (Mich. Ct. App. 2016) ....................... 5

*In re Guantanamo Bay Detainee Litigation*,
  630 F. Supp. 2d 1 (D.D.C. 2009) .................................. 33

*In re Knoxville News-Sentinel Co., Inc.*,
  723 F.2d 470 (6th Cir. 1983) ........................... 16, 17, 32

*In re Southeastern Milk Antitrust Litigation*,
  666 F. Supp. 2d 908 (E.D. Tenn. 2009) ......................... 32

*In re Stevens*,
  2018 WL 1345415 (Mich. Ct. App. 2018) ......................... 5

*Kanuszewski v. Mich. Dep't of Health & Human Services*,
  927 F.3d 396 (6th Cir. 2019) ....................................... 27

*Leonard v. Robinson*,
  477 F.3d 347 (6th Cir. 2007) ....................................... 31

*Martin v. City of Broadview Heights*,
  712 F.3d 951 (6th Cir. 2013) ....................................... 30

*Martis v. Dish Network*,
    2013 WL 6002208 (W.D. Mich. Nov. 12, 2013) ............................ 32

*Memphis Comm. Sch. Dist. v. Stachura*,
    477 U.S. 299 (1986) ...................................................... 27-28

*N.Y. Civil Liberties Union v. N.Y. City Transit Auth'y*,
    684 F.3d 286 (2nd Cir. 2011) ............................................. 32

*Newsday LLC v. Cty. of Nassau*,
    730 F.3d 156 (2nd Cir. 2013) .................................. 17, 20, 21, 22

*Nixon v. Warner Communications, Inc.*,
    435 U.S. 589 (1978) ...................................................... 32

*Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.*,
    951 F. Supp. 679, 691 (W.D. Mich. 1996) ................................. 32

*Press-Enterprise Co. v. Superior Ct. of Cal., Riverside Cnty.*,
    464 U.S. 501 (1984) ................................................... 11, 17

*Press-Enterprise Co. v. Superior Ct. of Cal., Cnty. of Riverside*,
    478 U.S. 1 (1986) ........................................................ 11

*Price v. Medicaid Director*,
    838 F.3d 739 (6th Cir. 2016) ............................................. 26

*Publicker Indus., Inc. v. Cohen*,
    733 F.2d 1059 (3rd Cir. 1984) ........................................... 33

*Puckett v. Lexington-Fayette Urban Cnty. Gov't.*,
    833 F.3d 590 (6th Cir. 2016) ............................................. 26

*Republic of the Philippines v. Westinghouse Elec. Corp.*,
    949 F.2d 653 (3rd Cir. 1991) ............................................. 15

*Rushford v. New Yorker Magazine, Inc.*,
    846 F.2d 249 (4th Cir. 1988) .................................... 17, 22, 33

*Russo v. City of Cincinnati*,
    953 F.2d 1036 (6th Cir. 1992) ............................................ 31

*Saginaw Cnty. v. STAT Emergency Med.,*
 946 F.3d 951 (6th Cir. 2020) ........................................................ 26

*Sandul v. Larion,*
 119 F.3d 1250 (6th Cir. 1997) ...................................................... 31

*Shaw v. Delta Air Lines, Inc.,*
 463 U.S. 85 (1983) ........................................................................ 26

*Smith v. Cupp,*
 430 F.3d 766 (6th Cir. 2012) ........................................................ 30

*Taylor v. Mich. Dep't of Natural Resources,*
 502 F.3d 452 (6th Cir. 2007) ........................................................ 28

*Tri-Cty. Wholesale Distribs., Inc. v. Wine Grp., Inc.,*
 565 Fed. App'x. 477 (6th Cir. 2012) .................................. 16, 20, 32

*U.S. v. Ochoa-Vasquez,*
 428 F.3d 1015 (11th Cir. 2005) ................................................17-18

*United States v. McVeigh,*
 119 F.3d 806 (10th Cir. 1997) ...................................................... 15

*Uzuegbunam v. Preczewski,*
 141 S. Ct. 792 (2021) .............................................................. 26, 28

*VanderKodde v. Mary Jane M. Elliott, PC,*
 951 F.3d 397 (6th Cir. 2020) ........................................................ 25

*Video Software Dealers Ass'n v. Orion Pictures Corp.,*
 21 F.3d 24 (2nd Cir. 1994) ........................................................... 16

*Villarreal v. City of Laredo,*
 __ F.4th __; 2021 U.S. App. LEXIS 32505 (5th Cir. 2021) ............ 31

*Will v. Mich. Dept. of State Police,*
 491 U.S. 58 (1989) ........................................................................ 26

## STATUTES

28 U.S.C. § 1291 ................................................................................. 1

28 U.S.C. § 1331 ................................................................................. 1

28 U.S.C. § 1343 ................................................................................. 1

42 U.S.C. § 1983 ........................................................................... 1, 33

42 U.S.C. § 1988 ............................................................................... 33

## COURT RULES

Mich. Ct. R. 8.112 ............................................................................... 8

Mich. Ct. R. 8.119 ........................................................ 3, 4, 5, 19, 20, 22

Mich. Ct. R. 7.109 ............................................................................. 19

## SECONDARY SOURCES

Professor James Pfander, *Resolving the Qualified Immunity
     Dilemma: Constitutional Tort Claims for Nominal Damages*,
     111 COLUM. L. REV. 1601 (2011) ..................................................... 29

## STATEMENT IN REGARDS TO ORAL ARGUMENT

Appellants, by counsel, request oral argument as the appeal addresses a matter of critical concern under the First Amendment to the United States Constitution and a new standard precluding qualified immunity for nominal damages claims made in this Circuit.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction to entertain and hear this case pursuant to 28 U.S.C. § 1331 and § 1343 as this case involves federal questions under the United States Constitution and federal civil rights under 42 U.S.C. § 1983.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to review the District Court's final judgment and all prior orders and decisions as a final judgment was entered on November 16, 2021. **Judgment, RE 98, PageID #998**. Plaintiffs-Appellants timely appealed to this Court on the same day. **Notice of Appeal, RE 99, PageID #999.**

-2-

## STATEMENT OF THE ISSUE(S) PRESENTED FOR REVIEW

I.  Is there a First Amendment right to access (and copy) audio recordings of court proceedings made and kept by the Michigan courts?

**Appellants answer:**       **Yes.**

II.  Are Appellants entitled to an immediate remedy as requested?

**Appellants answer:**       **Yes.**

III.  Are Appellees Mead and Hefferan entitled to invoke and/or entitled to receive qualified immunity in this case?

**Appellants answer:**       **No.**

## INTRODUCTION

The First Amendment to the United States Constitution bars the government from prohibiting access to courts records in the absence of specific, on-the-record findings that the public's interest in access to information is outweighed by a compelling articulable showing of specific articulable harm. This is known as the *Press-Enterprise* rule. This case involves a challenge to two local courts' practices of denying access to court records by local government officials, namely audio court recordings, when not meeting the *Press-Enterprise* standard. For the reasons outlined here, the District Court errored when finding otherwise against the near unanimous weight of authority nationwide.

## FACTS / STATEMENT OF THE CASE

Under the Michigan Court Rules, audio recordings of court proceedings made and kept by the Michigan courts are expressly designated as "court records." Mich. Ct. R. 8.119(F).  These "Audio Court Recordings" (or ACRs) "are subject to access" by citizens but, in reality, really are not. See Mich. Ct. R. 8.119(H)(2)(b). Under the latter subrule, local state trial courts are required to "adopt an administrative order" to "establish a policy for whether to provide access for records defined in subrule (F) and if access is to be provided, outline the procedure for

accessing those record." Mich. Ct. R. 8.119(H)(2)(b). Those court rules, legislated by the Michigan Supreme Court,[1] never mandated that complete access be denied by an administrative order. But that is what has ultimately occurred.

In fulfillment of the command at Mich. Ct. R. 8.119(H)(2)(b) and the directives of Appellee Boyd, the Bay County Probate Court and the Antrim County Circuit Court issued two nearly identical local administrative orders governing their own courts. **Bay Cnty. Probate Ct. LAO, RE 71-3, PageID #753-756; Antrim Cnty. Cir. Ct. LAO, RE 71-6, PageID #760-764**. Both identically command that access to any audio recordings of court proceedings from their respective court, despite these ACRs expressly being "court records" by court rule, "is not permitted." **Bay Cnty. Probate Ct. LAO, RE 71-3, PageID #756 (¶7)**; **Antrim Cnty. Cir. Ct. LAO, RE 71-6, PageID #763 (¶7).** Neither local administrative order made "specific, on-the-record findings that the public's interest in access to information is outweighed by a compelling articulable showing of specific articulable harm" as required by the *Press-*

---

[1] A court promulgating a rule or issuing administrative order, outside of a contested case, is undertaking legislative activity. *Alia v. Mich. Supreme Ct.*, 906 F.2d 1100, 1102 (6th Cir. 1990).

*Enterprise* standard. **See *id.*** Both of these local administrative orders were similarly worded because they were issued at the request and direction of the State Court Administrator, Thomas Boyd, who is also sued in his official capacity, for the model document known as Model LAO 8 as discussed later herein. **Sec. Am. Compl., RE 43, PageID #514 (¶60).**[2]

Appellants Kolu Stevens and Claudette Greenhoe were parties in two unrelated but fully completed state court proceedings in Michigan. See *In re Stevens*, 2018 WL 1345415 (Mich. Ct. App. 2018); *In re Estate of John H. Kuflewski*, 2016 Mich. App. LEXIS 1668 (Mich. Ct. App. 2016). After each lost their respective case, Appellants—who have no connection to each other prior to this federal case—separately believed that the transcripts produced for their appeals in the state courts contained serious transcription errors. With that concerning suspicion aroused and as outlined below, each sought to access, review, and make copies of the ACRs which consist of the official digital audio recordings of their state

---

[2] The District Court dismissed the MSCAO pursuant to the parties' stipulation due to its post-commencement invocation of Eleventh Amendment sovereign immunity by MSCAO, leaving Appellee Boyd sued in his official capacity. **Stipulation, RE 8, PageID #84-86**; **Order, RE 9, PageID #88.**

court proceedings made concurrent before the state trial courts (instead of possibly compromised court reporters). As explained herein, each were denied access or copies.

### *Claudette Greenhoe*

Appellant Claudette Greenhoe and her husband, Patrick,[3] were parties to litigation before the Bay County Probate Court. Greenhoe submitted to the Bay County Probate Court Administrator, Appellee Kim Mead, a "letter to serve as formal demand… to inspect and reasonably make (or obtain) crisp copies of the audio recordings of the proceedings of the case captioned as *In re Estate of John Kuflewski*, Bay County Probate Court Case No. 14-49781-DE by Friday, April 28, 2017." **Greenhoe Demand Ltr., RE 71-1, PageID #748-750.** The demand explained there were "serious and substantial errors in the transcript, to the point of questioning the validity, accuracy, completeness, and faithful production of the legally-created transcripts." *Id.* **at PageID #748.** On April 25, 2017, Administrator Mead responded that access to the "[a]udio files are not available pursuant to the [Bay County Probate] Court's

---

[3] An original party plaintiff to this litigation was Patrick Greenhoe. However, during the pendency of this federal litigation, he passed away. **Suggestion, RE 44, PageID #544-545.** Obviously, he has not appeal.

Administrative Order 2014-01J"[4] and refused any access or to provide a copy. **Mead Resp. Ltr., RE 71-2, PageID #752.**

### *Kolu Stevens*

Appellant Kolu Stevens was a party to litigation before the Family Division of the Antrim County Circuit Court. Also having suspicions of major transcription errors when she undertook an appeal, Stevens submitted to the Antrim County Circuit Court Administrator, Appellee William Hefferan, a "letter to serve as formal demand… to inspect and reasonably make (or obtain) crisp copies of the audio recordings of the proceedings of the case captioned as *In re Stevens*, Antrim County Circuit Court - Family Division Case No. 16-7652-NA by Friday, June 29, 2018 by Friday, June 29, 2018." **Stevens Demand Ltr., RE 71-4, PageID #757-758.** Exactly like Greenhoe's circumstances, Stevens also explained there were "serious and substantial errors in the transcript, to the point of questioning the validity, accuracy, completeness, and faithful production of the legally-created transcripts." *Id.* **at PageID #757.** On June 22, 2018, Administrator Hefferan also refused access suggesting

---

[4] A copy of that particular LAO is in the court record. **Bay Cnty. Probate Ct. LAO, RE 71-3, PageID #753-756.**

Antrim County Circuit Court's Administrative Order 2015-01[5] "prohibits me from complying with your request." **Hefferan Resp. Ltr., RE 71-5, PageID #759.**

### *Model LAO 8*

Appellee Thomas Boyd is the State Court Administrator within the State Court Administrative Office, a state constitutional officer[6] charged with administrative oversight of Michigan's trial courts. **SCAO Webpage, RE 83-4, PageID #871** One of his office's responsibilities involve local administrative orders. See Mich. Ct. R. 8.112(B)(3). A trial court may issue a local administrative order governing only internal court management. Mich. Ct. R. 8.112(B)(1). However, before an LAO's effectiveness, such an administrative order must be sent to the State Court Administrative Office (i.e. Appellee Boyd) for "approval." **LAO Procedures, RE 83-5, PageID #874 (¶7).** While the term "*local administrative order*" would suggest that these types of orders are

---

[5] A copy of that particular LAO is in the court record. **Antrim Cnty. Cir. Ct. LAO, RE 71-6, PageID #760-764.**

[6] Article VI, Section 3 of the Michigan Constitution states that the Michigan Supreme Court "shall appoint an administrator of the courts and other assistants of the supreme court as may be necessary to aid in the administration of the courts of this state."

created by respective local chief judges or local courts, they really are not. Instead, Administrator Boyd mandates that "[i]f the State Court Administrative Office has created a model order, the [trial] court must use that model when submitting its [proposed local administrative] order." *Id.* **at PageID #874 (¶8).**

One such model LAO is "Model Local Administrative Order 8" regarding "access, inspection, reproduction, and creation of court records." **Model LAO 8, RE 83-2, PageID #861-865.** This "Model LAO 8" was created in 2014[7] and designed to cause chief judges of trial courts to enact local orders that "regulate requests for access, inspection, and reproduction of public court case records and to allow flexibility in providing approved court forms or creating new case records." *Id.* **at PageID #861.** As it applies to ACRs, Model LAO 8 provides only two choices—*full* access or *no* access. *Id.* **at PageID #864 (¶¶7-8).** It fails to apply, require, or follow the *Press-Enterprise* standard as a required option.

---

[7] An updated version of Model 8 was issued in 2020 midway through this case. **Am. Model LAO 8, RE 83-3, PageID #866-870.** However, it did not make any corrections as to the First Amendment shortcoming raised in this case.

In fulfillment of Administrator Boyd's command, the Bay County Probate Court and the Antrim County Circuit Court issued two nearly identical local administrative orders governing their own courts that are the subject of this challenge. **Bay Cnty. Probate Ct. LAO, RE 71-3, PageID #753-756; Antrim Cnty. Cir. Ct. LAO, RE 71-6, PageID #760-764**. Both identically command that access to any audio recordings of court proceedings "is not permitted," despite the ACRs expressly being "court records." **Bay Cnty. Probate Ct. LAO, RE 71-3, PageID #756 (¶7)**; **Antrim Cnty. Cir. Ct. LAO, RE 71-6, PageID #763 (¶7).** Following Model LAO 8's mandatory outline, **Model LAO 8, RE 83-2, PageID #864 (¶8)**, neither local administrative order made "specific, on-the-record findings that the public's interest in access to information is outweighed by a compelling articulable showing of specific articulable harm" as required by *Press-Enterprise*. Both of these adopted local administrative orders were similarly worded because they were issued at the request and direction of Administrator Boyd.

### *This Lawsuit*

This suit was filed over three long years ago on July 9, 2018. **Compl., RE 1.** Appellants Greenhoe and Stevens later alleged, by the

last amended pleading, that a First Amendment right of access extends to certain court records in connection with state-level judicial proceedings, including the real-time audio recording of proceedings (i.e. the ACRs) in the *Kuflewski* case and the *Stevens* case, and that both local administrative orders fail to have any specific, on the record findings, demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest under *Press-Enterprise Co. v. Superior Ct. of Cal., Riverside Cnty.*, 464 U.S. 501, 510 (1984) (hereinafter "*Press-Enterprise I*") and *Press-Enterprise Co. v. Superior Ct. of Cal., Cnty. of Riverside*, 478 U.S. 1, 13-14 (1986) (hereinafter "*Press-Enterprise II*"). **Sec. Am. Compl., RE 43, PageID #515**. Appellants Greenhoe and Stevens further asserted that by denying access and/or copies of the ACRs in the *Kuflewski* Case and the *Stevens* Case, Appellees violated the First Amendment. ***Id.* at PageID #516.** Finally, Greenhoe and Stevens allege that "[t]o the extent that any Defendant relied or relies upon Antrim County Circuit Court Administrative Order 2015-1 and Bay County Probate Court Administrative Order 2014-01J, such is unlawful under the First Amendment." ***Id.***

-11-

### *The District Court's Decision*

The District Court issued its final judgment on November 16, 2021 after issuing an opinion correctly finding that the ACRs "are not sealed, they are just not made available to the public or even the parties." **Opinion, RE 97, PageID #978.** After rejecting state sovereign immunity as demanded by Appellees and declining to undertake any qualified immunity analysis sought by Appellees Mead and Hefferan, the trial court found that the First Amendment's right of access does not attach to audio recordings of court proceedings. *Id.* As such, the lower court grant summary judgment in favor of Appellee Boyd and also granted Appellees Hefferan and Mead's motion for judgment on the pleadings. This appeal now follows.

-12-

## SUMMARY OF ARGUMENT

ACRs are undisputedly "court records" and Appellants were denied access for inspection and copying in violation of the First Amendment when Model LAO 8, Bay County Probate Court's Administrative Order 2014-01J, and Antrim County Circuit Court's Administrative Order 2015-01 prohibited access in the absence of any specific, on the record findings, demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The District Court errored in granting summary judgment in favor of Appellee Boyd and dismissal on the pleadings in favor of Appellees Mead and Hefferan. The trial court should have granted summary judgment in favor of Appellants pursuant to Rule 56 of the Federal Rules of Civil Procedure and awarded the relief sought by Plaintiffs.

## STANDARD OF REVIEW

Appellees Mead and Hefferan were granted a judgment upon the pleadings. This Court reviews such a decision de novo. *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 252 (6th Cir. 2020). It applies the same standard used to evaluate a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.* Appellee Boyd was granted summary judgment in his favor. Grants of summary judgment are reviewed de novo. *Fisher v. Nissan North America, Inc.*, 951 F.3d 409, 416 (6th Cir. 2020). Lastly, Appellants also moved for but were denied summary judgment in their favor against all three Appellees. Denials of motions for summary judgment are also reviewed de novo. *Beck v. Hamblen Cnty., Tenn.*, 969 F.3d 592, 598 (6th Cir. 2020).

## ARGUMENT

The ACRs sought by Appellants are undisputedly "court records." Mich. Ct. R. 8.119(F). It is "well settled"[8] that there is a qualified right of public access to court records via the First Amendment. *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014). All court records—whether one labels them "case records" or "court records"—are open for public inspection or copying. *Id.* ("The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny."). However, "only in unusual circumstances" or only with "the most compelling reasons" may court records be withheld and only when "closure is essential to preserve

---

[8] See also *Hartford Courant Co. v. Pellegrino*, 371 F.3d 49, 57 (2nd Cir. 2004) ("[T]he media and the public possess a qualified First Amendment right to inspect docket sheets, which provide an index to the records of judicial proceedings."); *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997) ("A number of circuits have concluded that the logic of [*Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 7-9, (1986) (establishing a First Amendment right of access to preliminary hearings in state criminal cases)] extends to at least some categories of court documents and records, such that the First Amendment balancing test there articulated should be applied before such qualifying documents and records can be sealed.") (citations omitted)), cert. denied, 522 U.S. 1142 (1998); *Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 659 (3rd Cir. 1991) ("the First Amendment, independent of the common law, protects the public's right of access to the records of civil proceedings").

higher values and is narrowly tailored to serve those interests." *Id.* at 266; *Courthouse News Service v. Planet*, 947 F.3d 581, 594 (9th Cir. 2020) (quoting *Press-Enterprise II*). This Circuit has directed for the same. *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983); *Brown & Williamson Tobacco Corp v. Fed. Trade Comm'n*, 710 F.2d 1165, 1177 (6th Cir. 1983) (suggesting a First Amendment right of access to court documents). "The First Amendment access right extends to court dockets, *records*, pleadings, and exhibits, and establishes a presumption of public access that can only be overcome by specific, on-the-record findings that the public's interest in access to information is overcome by specific and compelling showings of harm." *Tri-Cty. Wholesale Distribs., Inc. v. Wine Grp., Inc.*, 565 Fed. App'x. 477, 490 (6th Cir. 2012) (Gwin, J., concurring) (emphasis added).

The right of public access is "rooted in the public's First Amendment right to know about the administration of justice." *Video Software Dealers Ass'n v. Orion Pictures Corp.*, 21 F.3d 24, 26 (2nd Cir. 1994). "The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny." *Doe*, 749 F.3d at 265. This Court has explained that "any

-16-

attempt to maintain secrecy, as to the records of this court, would seem to be inconsistent with the common understanding of what belongs to a public court of record, to which all persons have the right of access." *Knoxville News-Sentinel*, 723 F.2d at 474 (quoting *Ex Parte Drawbraugh*, 2 App.D.C. 404 (1894)).

While a First Amendment right of access to court records clearly exists, it is undisputedly "qualified." The First Amendment bars the government from *totally* banning access to the courts as well as the court's records. However, court records can be kept from public inspection and copying if "specific, on-the-record findings that the public's interest in access to information is outweighed by a compelling articulable showing of specific articulable harm" under the *Press-Enterprise* standard. *Press-Enterprise I*, 464 U.S. at 510. This well recognized standard has been applied to both proceedings and court records. *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (applying *Press-Enterprise* to public judicial records); *Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 165 (2nd Cir. 2013). If there is a lack of articulated interests and specific findings made, denying access is an automatic per se violation of the First Amendment. *U.S. v. Ochoa-*

*Vasquez*, 428 F.3d 1015, 1030 (11th Cir. 2005). When denials of access to court records fail to articulate the reason for the closure or the evidence that supported the need for closure, it "do[es] not comply with our First Amendment jurisprudence" under *Press-Enterprise* and invalidation of the same is required. *Id.*

## I.　The District Court was in error when rejecting First Amendment protections regarding ACRs of Michigan state trial courts' proceedings.

There is no material question of fact that the ACRs sought by Appellants are "court records" subject to public access. There is also no material question of fact that these LAOs (which bar *all* access) fail to have the required "specific, on-the-record findings that the public's interest in access to information is outweighed by a compelling articulable showing of specific articulable harm" under the *Press-Enterprise* standard. There were no findings made in the LAOs that closure of access to the ACRs is essential to preserve some sort of higher values, and the closure methodology selected—a complete ban—is not narrowly tailored to serve that non-articulated interest. Moreover, such a finding is impossible to make even if it were done now. As such,

Appellants' denial of access, premised on unconstitutional LAOs, as to the sought ACRs clearly violated the First Amendment.

The District Court saw it differently (and erroneously). From its perspective, the ACRs are not what it calls "judicial records" because they are not "documents or other materials that played any role in the adjudicative process." **Opinion, RE 97, PageID #988-989.** But both common sense and state law directs otherwise. The ACRs are expressly "courts records" as legislated by Michigan court rule. Mich. Ct. R. 8.119(F). Moreover, contemptuously-made records of the actual proceedings play a huge role in the appellate adjudicative process (as this Court knows from its own experiences as appellate judges). See Mich. Ct. R. 7.109(B)(1)(a). In short, the District Court's irreconcilable conclusion was clearly in error.

Wrongfully assuming that ACRs are not court records, the District Court went on to explain that there is no evidence of any "tradition" of public access to the predecessor method of keeping verbatim records of proceedings—i.e. the court stenographer's or court reporter's notes. *Id.* **at PageID #990.** That mis-frames the issue. The federal courts need not decide whether ACRs are (or are not) court records because Michigan law

has already legislated the answer—they *are* court records, Mich. Ct. R. 8.119(F), and the "First Amendment access right extends to court… *records*… and establishes a presumption of public access that can only be overcome by specific, on-the-record findings that the public's interest in access to information is overcome by specific and compelling showings of harm." *Tri-Cty. Wholesale*, 565 Fed. App'x. at 490 (Gwin, J., concurring).

From two faulty foundation notions, the District Court ultimately concluded that ACRs are not "court records" to which the First Amendment provides a right of access. The District Court clearly errored; reversal is required.

The District Court also looked to the Second Circuit's decision in *Newsday* to conclude that the Second Circuit only applies the First Amendment right of access to those limited "documents necessary to understand the merits of a civil proceeding." 730 F.3d at 164. The lower court placed far too much weight on a single quoted sentence. That sentence, out of context, is not what *Newsday* teaches.

*Newsday* involved the death of a young woman whom her Estate alleged that members of the Nassau County Police Department had negligently contributed to a fatal stabbing by her ex-boyfriend. The

media took extreme notice of the case. Various documents were sought as part of the discovery process including a 700+ page internal investigation report. The report was going to be released to the press by the Estate's counsel when the document was placed under seal. The seal was later only partially lifted to let a legislator review the report subject to a confidentiality order but only for settlement effectuation purposes. The legislator later contemptuously made a televised statement that revealed some of the information contained in the confidential document. When contempt proceedings were started against the legislator, the district court closed the courtroom from the media. The media later intervened to file an objection and the district court overruled most of the objection but concluded that portions of the hearing transcript should be unsealed. The media intervenors appealed the district court's decision of keeping both the report and the remaining portions of the transcripts under seal.

The Second Circuit explained that the First Amendment "protects the public against the government's arbitrary interference with access to

important information." *Id.* at 164.[9] With such a principle in the background, the Second Circuit ordered the district court to release a full, unredacted copy of the record of the hearing (i.e. the hearing transcript) but held that the internal affairs report, as a discovery exhibit that had been subject to a protective order, is outside of constitutional access protections.

*Newsday* is totally consistent with this case. It has long been understood that discovery documents, which are ordinarily exchanged in private, stands on a wholly different footing than does a document filed by or reviewed by a court. E.g. *Rushford,* 846 F.2d at 252. The investigation report in *Newsday* was nothing more than a discovery document that was allowed to be seen by legislators for settlement effectuation purposes that later went awry. The report was not reviewed by the court or entered into the court record, and was subject to a protective order that was reviewed using the *Press-Enterprise* process.

Here, the ACRs in this case are of a different legal character. First and foremost, they are designed by Michigan law as "court records,"

---

[9] This is exactly what the LAOs om this case effectuates—arbitrary interference with access to important information needed by Appellants.

Mich. Ct. R. 8.119(F), unlike the investigation report which was a police agency's confidential document. Second, the ACRs are not private party discovery documents. Third and relatedly, they are the official method of contemporaneously recording on-the-record public court proceedings created at taxpayer expense. Fourth, these particular ACRs involve proceedings that were not held in chambers, were not closed to the public, or were otherwise previously placed under seal; in other words, they do not any confidential information like the investigation report. See **Sec. Am. Compl., RE 43, PageID #509.** In short, the single sentence cited by lower court in *Newsday* is nothing more than a slender reed that cannot carry the legal weight for which it was cited. *Newsday* does not carry the weight the District Court claims it does.

### *Conclusion*

The District Court's analysis went completely awry. The trial court errored in concluding the ACRs—expressly defined by Michigan law to be court records—are not subject to the qualified First Amendment right of access for inspection and copying. Reversal is required. Appellees violated the First Amendment by precluding access to court records that are presumptively open to public scrutiny and to allow Appellants to

-23-

confirm—one way or the other—that the transcripts they think contain massive errors either have the errors or otherwise do not.[10]

As such, this Court is requested to reverse the grant of judgment on the pleadings for Administrators Mead and Hefferan; reverse the grant of summary judgment in favor of Administrator Boyd; and instead grant summary judgment in favor of Appellants.

## II.   Appellants are entitled to an immediate remedy.

### A.   An immediate remedy is requested.

Upon the grant of summary judgment in favor of Appellants in this Court, the question is what is the warranted remedy? This case has been brought pursuant to 42 U.S.C. § 1983. The lower court did not reach the

---

[10] Appellants are certainly not arguing that no restrictions are ever possible. Perhaps a particular ACR has confidential testimony and that ACR must be sealed. Or perhaps there is a legitimate concern that original ACRs must be preserved from overhandling and only digital versions copied on an USB drive is the way to provide access to protect the original from mishandling. However, the LAOs here have not imposed *reasonable* restrictions or needed handling limitations; they impose *a total ban* on all access. It violates the First Amendment in that the LAOs, acting as a sort of broad, generic, and automatic seal, did not provide or list any specific, on-the-record findings that the public's interest in access to information is outweighed by a compelling articulable showing of specific articulable harm. But even if it tried for these particular ACRs, the *In re Stevens*, and *In re Estate of John H. Kuflewski* ACRs fail to have anything contained upon it which has specific articulable harm by a compelling articulable showing.

remedy question and this Court normally does not address such when the district court did not first address the matter given this court is a "court of review, not of first view." *VanderKodde v. Mary Jane M. Elliott, PC*, 951 F.3d 397, 404 (6th Cir. 2020). A simple remand is normally warranted. *Id.*

However, Appellants have serious concerns about simply remanding this case. The case is over three years old. The District Court took over *two years* to resolve the relatively simply initial (pre-answer) motions to dismiss, without explanation. See **Ltr. to Judge, RE 31, PageID #372-373**. It took more than 15 months to decide motions for summary judgment on a case that had essentially no substantive discovery undertaken or needed. Delay of remedies from First Amendment violations means irreparable injury to Appellants. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). A remand with years more delay is intolerable. As such, this Court is asked to take additional steps to move forward this First Amendment case further and more promptly than the trial court has done across the past three years.

The remedy Appellants seek are 1.) enjoining[11] Appellees from refusing the ability of Appellants to inspect and reasonably make (or obtain) crisp copies of the ACRs sought; 2.) entering a declaratory judgment, pursuant to the Declaratory Judgment Act,[12] finding Antrim County Circuit Court Administrative Order 2015-1, Bay County Case Probate Court Administrative Order 2014-01J, and/or Model LAO 8 violates the First Amendment to the United States Constitution; 3.) award nominal damages[13] of \$1.00 against Administrators Mead and Hefferan; and 4.) award attorney fees and costs against all Appellees pursuant to 42 U.S.C. § 1988(b). The Court is requested to award all four and *then* remand with instructions to District Court to enter said relief

---

[11] Under the *Ex Parte Young* doctrine, a federal court can issue prospective injunctive and declaratory relief compelling a state official, in his official capacity, to comply with federal law. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 fn.10 (1989); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 fn.14 (1983); *Puckett v. Lexington-Fayette Urban Cnty. Gov't.*, 833 F.3d 590, 598 (6th Cir. 2016); *Price v. Medicaid Director*, 838 F.3d 739, 746-747 (6th Cir. 2016).

[12] The Declaratory Judgment Act provides a form of relief—an alternate remedy—in cases of actual controversy to declare the parties' rights and other legal relations. *Saginaw Cnty. v. STAT Emergency Med.*, 946 F.3d 951, 954 (6th Cir. 2020).

[13] An award of nominal damages properly provides redressability for past constitutional violations. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021).

immediately and allow Appellants to file a Rule 54(d) and W.D. Mich. L. Civ. R. 54.1 motion in due course to conclude this case.

### B.   Qualified immunity is not available as a defense.

Appellees Mead and Hefferan may attempt to re-invoke qualified immunity in this Court to singularly bar the nominal $1.00 damages award despite the lower court not reaching the issue. See *Kanuszewski v. Mich. Dep't of Health & Human Services*, 927 F.3d 396, 417 (6th Cir. 2019) ("qualified immunity only immunizes defendants from monetary damages—not injunctive or declaratory relief"). If this Court takes up this issue, there are two questions. First, does qualified immunity even bar a nominal damages award? This Circuit has not directly answered that question, to date. See *infra*. Second, assuming qualified immunity could bar nominal damages, are Administrators Mead and Hefferan entitled to it in this case? The answer to both questions is no.

### C.   Nominal damages should not be subject to qualified immunity.

While "the abstract value" of constitutional rights may not form the basis for § 1983 damages, nominal damages are an appropriate means of vindicating rights whose deprivation has not caused actual, provable injury. *Memphis Comm. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 fn.11

(1986). Nominal damages do not represent a remedy based on actual damages but a pro-forma award to merely acknowledge a wrong that needs to be made right. "Damages," in a legal sense, means the loss caused by one person to another or to his property. Yet, nominal damages are not premised on an actual loss from an actual injury, but *the absent of actual losses*. *Uzuegbunam*, 141 S. Ct. at 808 ("nominal damages can redress [a plaintiff's] injury even if he cannot or chooses not to quantify that harm in economic terms"). No court has seemingly looked at this question with any level of specificity. This Circuit has seemingly had two chances to possibly address the issue but did not address either head-on.

In *Eaddy-Bey v. Gosslin*, 860 F.2d 1078 (6th Cir. 1988), this Court explained a prison hearing officer who was granted qualified immunity "should have been immune from paying even nominal damages" but it allowed the nominal damage award to stand because the hearing officer did not appeal. *Id.* at fn.1. In *Taylor*, this Court implied qualified immunity as applicable to nominal damages claims without expressly saying it. *Taylor v. Mich. Dep't of Natural Resources*, 502 F.3d 452 (6th Cir. 2007). By this appeal, the Court is invited to specifically consider the

-28-

issue given the new life nominal damages now has in our jurisprudence in light of *Uzuegbunam* since these cases started three years ago.

By this appeal, this Court is invited to adopt the position argued by Professor James Pfander in his 2011 law review article entitled *Resolving the Qualified Immunity Dilemma: Constitutional Tort Claims for Nominal Damages*. 111 COLUM. L. REV. 1601 (2011). In the article, Profession Pfander argues that "because [nominal damages] do not threaten to impose personal liability on official defendants, nominal claims should not give rise to a qualified immunity defense." Accordingly, "such a regime would advance the acknowledged interest in maintaining a vibrant body of constitutional law without threatening to impose ruinous liability on the officials named in the complaint." It would encourage public officials who have violated a person's constitutional rights to easily and immediately admit their wrongs rather than using the structural de facto defense of delay and pro forma denials that today regularly clog the judiciary's dockets. Using Professor Pfander's argument in his law review article as Appellants' own, this Court is now expressly requested to adopt this new sound rule as a matter of first impression for this Circuit.

**D. Administrators Mead and Hefferan are not entitled to qualified immunity.**

Qualified immunity is handled as a two-part process. The first step is to determine if there is a violation of a constitutional right; the second is to ask if the right at issue was clearly established when the event occurred such that an objective reasonable officer would have known or should have known that his or her conduct violated it. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013).

As to the constitutionality prong of qualified immunity, denying access to court records when the *Press-Enterprise* standard was expressly not met renders their denials of access to the ACRs as unconstitutional under the First Amendment for the reasons previously outlined herein.

The second "QI" prong questions whether it was "apparent" that such unconstitutionality was established to a reasonable official. "'General statements of the law' are capable of giving clear and fair warning to officers even where 'the very action in question has [not] previously been held unlawful.'" *Smith v. Cupp*, 430 F.3d 766, 776-777 (6th Cir. 2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, "an action's lawfulness can be apparent from [1.] direct holdings, [2.] from specific examples described as prohibited, or [3.] from

the general reasoning that a court employs." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). This can be established from court decisions and even secondary sources. *Barker v. Goodrich*, 649 F.3d 428, 435-436 (6th Cir. 2011). All that needs to be shown is that it was "apparent" to be clearly established. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); see also *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992). Courts regularly refuse qualified immunity is clearly apparent First violation. *Leonard v. Robinson*, 477 F.3d 347, 365 (6th Cir. 2007); *Sandul v. Larion*, 119 F.3d 1250 (6th Cir. 1997); *Villarreal v. City of Laredo*, __ F.4th __; 2021 U.S. App. LEXIS 32505 (5th Cir. 2021).

Here, it was clearly established by Supreme Court precedent in *Press-Enterprise* that denying access to records in the explicit absence of any specific, on-the-record findings that the public's interest in access to information is outweighed by a compelling articulable showing of specific articulable harm violates the First Amendment.[14] In case *Press-Enterprise* was not clear enough, countless decisions from this Circuit,

---

[14] Undoubtedly, Appellees will argue they needed to follow the LAOs as written. But that is untrue. As a public official, "public officials owe their allegiance to the Constitution *first*, federal laws *second*, and state laws *third*." *Alleghany Corp v. Haase*, 896 F.2d 1046, 1055 (7th Cir. 1990) (Easterbrook, J, concurring) (emphasis added)

other circuits, and even in both Eastern and Western District Courts in Michigan reaffirm and uniformly apply that standard (or at least the general principle) regarding access to court records and made this issue beyond any reasonable debate. *Brown & Williamson*, 710 F.2d at 1165; *Knoxville News-Sentinel*, 723 F.2d at 476; *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978); *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002); *Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 691 (W.D. Mich. 1996); *Martis v. Dish Network*, 2013 WL 6002208, at *1-2 (W.D. Mich. Nov. 12, 2013); *Doe*, 749 F.3d at 265 ("It is well settled that the public and press have a qualified right of access to judicial documents and records…"); *Tri-Cty. Wholesale*, 565 Fed. Appx. at 490 (Gwin, J., concurring); *In re Southeastern Milk Antitrust Litigation*, 666 F. Supp. 2d 908, 915 (E.D. Tenn. 2009) ("There can be no doubt that the public has both a constitutional and a common law presumptive right of access to civil proceedings *and judicial records*."); *N.Y. Civil Liberties Union v. N.Y. City Transit Auth'y*, 684 F.3d 286, 298 (2nd Cir. 2011) ("the First Amendment guarantees a qualified right of access not only to criminal but also civil trials and to their related proceedings *and records*");

*Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1067-1070 (3rd Cir. 1984) ("the public and press possess a First Amendment ... right of access to civil proceedings"); *Rushford*, 846 F.2d at 253; *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984); *In re Guantanamo Bay Detainee Litigation*, 630 F. Supp. 2d 1 (D.D.C. 2009). There are countless more. Qualified immunity clearly fails for Appellees Mead and Hefferan.

## RELIEF REQUESTED

WHEREFORE, the Court is vacated the final judgment entered by the lower court; reverse the grant of judgment on the pleadings for Administrators Mead and Hefferan; reverse the grant of summary judgment in favor of Administrator Boyd; grant summary judgment in favor of Appellants; and remand with instructions to the District Court to immediately award the sought declaratory and injunctive relief, nominal damages, and attorney fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

Date: December 6, 2021        s/ Philip L. Ellison
                                      PHILIP L. ELLISON
                                      OUTSIDE LEGAL COUNSEL PLC
                                      PO Box 107
                                      Hemlock, MI 48626
                                      (989) 642-0055
                                      pellison@olcplc.com

                                      Attorneys for Appellants

## CERTIFICATE OF COMPLIANCE

Pursuant to Sixth Circuit Rule 32(a)(7)(C) and Sixth Circuit Rule 32(a), the undersigned certifies that this brief complies with the type-volume limitations of the Sixth Circuit Rule 32(a)(7)(B).

This brief has been prepared in proportional typeface using Century School Book 14-point font. The brief, including headers and footnotes, contains 6,329 words according to the Word Count feature in the Microsoft Word program, being less than 13,000 words.

The undersigned understands that a material misrepresentation in completing this certificate or circumvention of the type-volume limitations may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

Date: December 6, 2021        s/ Philip L. Ellison
                                                 PHILIP L. ELLISON
                                                 OUTSIDE LEGAL COUNSEL PLC
                                                 PO Box 107
                                                 Hemlock, MI 48626
                                                 (989) 642-0055
                                                 pellison@olcplc.com

                                                 Attorneys for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on the date stated below, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of and a copy of such filing to counsel of record at their email address(es) of record.

Date: December 6, 2021            s/ Philip L. Ellison
                                  PHILIP L. ELLISON
                                  OUTSIDE LEGAL COUNSEL PLC
                                  PO Box 107
                                  Hemlock, MI 48626
                                  (989) 642-0055
                                  pellison@olcplc.com

                                  Attorneys for Appellants

-36-

## DESIGNATION OF RELEVANT
## DISTRICT COURT DOCUMENTS

| RE. | PageID Range | Description of the Document |
|---|---|---|
| 1 | #1-15 | Complaint |
| 8 | #84-87 | Stipulation |
| 9 | #88 | Order |
| 31 | #372-373 | Letter to Judge |
| 43 | #506-518 | Second Amended Complaint |
| 44 | #544-545 | Suggestion |
| 71-1 | #748-750 | Greenhoe Demand Letter |
| 71-2 | #752 | Mead Response Letter |
| 71-3 | #753-756 | Bay County Probate Court LAO |
| 71-4 | #757-758 | Stevens Demand Letter |
| 71-5 | #759 | Hefferan Response Letter |
| 73-6 | #760-764 | Antrim County Circuit Court LAO |
| 83-2 | #861-865 | Model LAO 8 |
| 83-3 | #866-870 | Amended Model LAO 8 |
| 83-4 | #871 | SCAO Webpage |
| 83-5 | #874-875 | LAO Procedures |
| 97 | #978-997 | Opinion |
| 98 | #998 | Judgment |
| 99 | #999 | Notice of Appeal |