NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0336n.06

No. 21-1727

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 18, 2022
DEBORAH S. HUNT, Clerk

KOLU STEVENS; CLAUDETTE GREENHOE,

Plaintiffs - Appellants,

v.

MICHIGAN STATE COURT ADMINISTRATIVE OFFICE,

Defendant,

THOMAS P. BOYD, in his official capacity as Administrator of the State Court Administrative Office as successor to Milton L. Mack Jr.; KIM B. MEAD, in his personal and official capacities as Bay County Probate Court Administrator; WILLIAM M. HEFFERAN, in his personal and official capacities as Antrim County Circuit Court Family Division Administrator,

Defendants - Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

Before: BOGGS, MOORE, and GRIFFIN, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** The State of Michigan gives litigants many ways to access state judicial proceedings. Litigants may attend hearings; they may receive transcripts; they may challenge the accuracy of those transcripts and receive a second review; and they may, with permission, audio-record the proceedings themselves. But Michigan does not guarantee to litigants that they will receive the court's audio recordings. Two sets of state-court litigants who suffered adverse decisions challenged that policy in federal court, arguing that

denying access to court audio recordings violates the First Amendment. The district court dismissed their claims. We **AFFIRM**.

## I. BACKGROUND

### A. Statutory Background

First, some background on Michigan's court rules is in order. "The Michigan Rules of Court are the rules adopted by the Michigan Supreme Court to govern Michigan's legal system and the judges, lawyers, and other professionals who are charged with preserving the integrity of that system." Mich. Courts, Current Rules, Administrative Orders and Jury Instructions, https://www.courts.michigan.gov/rules-administrative-orders-and-jury-instructions/current-rules-and-jury-instructions/ (last visited July 6, 2022). Rule 8.119 of the Michigan Court Rules concerns "Court Records and Reports." Mich. Ct. Rule 8.119. This rule describes two types of relevant records: case records and court records.

*Case records*, discussed in Rule 8.119(D), include the "case history," the "case file," the calendar of actions, and the "official court record." Mich. Ct. Rule 8.119(D). The official court record consists of "[d]ocuments electronically filed with the court or generated electronically by the court." Mich. Ct. Rule 8.119(D)(4). As the Michigan Supreme Court Administrative Counsel explained in a Declaration in the district-court proceedings, "Case records would include a transcript of a hearing." R. 87-2 (Boomer Decl. at ¶ 7) (Page ID #931). *Court records*, discussed in Rule 8.119(F), include "[c]ourt recordings, log notes, jury seating charts, and all other records such as tapes, backup tapes, discs, and any other medium used or created in the making of a record of proceedings." Mich. Ct. Rule 8.119(F); R. 87-2 (Boomer Decl. at ¶¶ 8–9) (Page ID #931). A separate Rule defines court records as also including, inter alia, "documents, recordings, data, and

other recorded information created or handled by the court, including all data produced in conjunction with the use of any system for the purpose of transmitting, accessing, reproducing, or maintaining court records." Mich. Ct. Rule 1.109(A)(1)(a)(ii).

The Michigan Rules do not treat these two types of records alike. *Case records* "are public records, subject to access in accordance with" the Michigan Rules of Court. Mich. Ct. Rule 8.119(H). When it comes to *court records*, however, the Rules instruct each court to "establish a policy for whether to provide access." Mich. Ct. Rule 8.119(H)(8)(b). The Michigan Supreme Court provides a template administrative order for local courts to adopt pursuant to the rules that includes a section on "[a]ccess to court recordings." R. 87-3 (State Ct. Template at 4) (Page ID #937). The template provides that a local court can decide that "access to audio or video recordings" either "is permitted in accordance with this order" or "is not permitted." *Id.* The local court next submits its proposed procedures to a regional State Court Administrative Office, which then approves them as a document called a local administrative order. R. 87-4 (Local Administrative Order Procedures at 1) (Page ID #940). The upshot of all this is that although local courts must provide access to transcripts, they may individually decide whether to let litigants access audio and video recordings of proceedings.

**B. Factual Background**

Appellants in this case are two sets of state-court plaintiffs: Patrick and Claudette Greenhoe, and Kolu Stevens. R. 43 (Second Am. Compl. at ¶¶ 8, 30) (Page ID #508, 510). The Greenhoes were parties to a probate-court case in Bay County. *Id.* at ¶ 8 (Page ID #508); *see In re Est. of Kuflewski*, No. 327848, 2016 Mich. App. LEXIS 1668 (Mich. Ct. App. Sept. 13, 2016) (per curiam). Stevens was party to a family-court case in Antrim County. R. 43 (Second Am.

Compl. at ¶ 30) (Page ID #510); *see In re Stevens*, No. 339681, 2018 Mich. App. LEXIS 580 (Mich. Ct. App. Mar. 15, 2018) (per curiam). Appellants had public access to the trials in question and received transcripts from those trials. R. 43 (Second Am. Compl. at ¶¶ 12, 16–18, 34–37) (Page ID #508, 509, 511). Appellants suffered adverse outcomes in their respective cases and appealed to the Michigan Court of Appeals. *Id.* at ¶¶ 10, 32 (Page ID #508, 510).

After Appellants lost their appeals, they reviewed the transcripts that the state had produced for their appeals and allegedly noticed that the transcripts contained "substantial errors and misstatements." *Id.* at ¶¶ 12, 34 (Page ID #508, 511). The Greenhoes sent a letter to the Michigan Court Reporting and Recording Board of Review, which prompted the state to review the audio recordings against the transcripts. R. 14-4 (Ct. Rep. Letters at 1) (Page ID #203). The review revealed only three typographical errors. *Id.* at 1–2 (Page ID #203–04). Plaintiff Stevens did not make such a request to the Board of Review. Mead & Hefferan Br. at 7.

Although their state appeals had concluded, Appellants requested access to the audio recordings from their lower-court proceedings, and the court administrators, Kim Mead and William Hefferan, denied those requests. R. 43 (Second Am. Compl. at ¶¶ 15, 21, 40, 42) (Page ID #508, 509, 511).[1] Both administrators cited their courts' applicable local administrative orders, which did not permit Appellants to access audio recordings. R. 71-2 (Mead Ltr.) (Page ID #752); R. 71-5 (Hefferan Ltr.) (Page ID #759).

---

[1] Michigan's Rules of Court permit parties to make their own audio recordings of court proceedings with the court's approval. Mich. Ct. Rule 8.109(C). There is no evidence that Appellants requested to do so here.

**C. Procedural History**

The Greenhoes sued Appellee Mead, the Bay County Probate Court Administrator, in Bay County Circuit Court. R. 14-6 (Greenhoes State Compl. at 1) (Page ID #215). The Greenhoes sought a declaratory judgment that the policy against providing audio recordings violated the First Amendment and the common-law right of access to public records, and injunctive relief requiring Mead to accede to the Greenhoes' request for recordings. *Id.* at ¶¶ 25–41 (Page ID #218–20). The state court eventually dismissed the complaint for lack of subject-matter jurisdiction and closed the case. R. 14-7 (Order Vacating Op.) (Page ID #227). Stevens does not appear to have filed a similar state-court case.

Appellants then sued in federal court, naming as defendants the Michigan State Court Administrative Office; the Administrator of the Michigan State Court Administrative Office; Mead, the Administrator of the Bay County Probate Court; and Hefferan, the Administrator of the Antrim County Circuit Court's Family Division. R. 43 (Second Am. Compl. at ¶¶ 4–6) (Page ID #507). Appellants alleged a violation of the First Amendment right to access the courts. *Id.* at ¶¶ 62–69 (Page ID #515–16). They sought an order enjoining the defendants from withholding the audio records of their court proceedings, a declaratory judgment that all local administrative orders that do not allow such access violate the First Amendment, and nominal damages against the local court administrators. *Id.* at ¶ 70 (Page ID #516–17). Because the Michigan State Court Administrative Office declined to waive sovereign immunity, the district court dismissed the Office from the case. R. 8 (Proposed Stipulation at ¶¶ 3–4) (Page ID #85–86); R. 9 (Order Approving Stipulation) (Page ID #88).

Appellees filed dispositive motions styled as either motions to dismiss or for summary judgment, arguing that Appellants had failed to state a First Amendment claim. R. 38 (Order Granting R. & R. in Part at 2–4) (Page ID #453–55). The magistrate judge recommended granting the motions and dismissing the case, but the district court disagreed. *Id.* at 4 (Page ID #455). Because there is a "presumptive right to access court records," the district court found that Appellants stated a plausible First Amendment claim. *Id.* at 3–4 (Page ID #454–55). The parties then resumed motion practice: Appellants moved for summary judgment, Mead and Hefferan moved for judgment on the pleadings, and the Administrator of the Michigan State Court Administrative Office, Thomas Boyd, moved for summary judgment. R. 97 (Op. and Order Granting Defs. Mots. and Den. Pls. Mots. at 1) (Page ID #978).

The district court granted Appellees' motions. The district court first concluded that sovereign immunity did not bar the suit against the three court administrators. *Id.* at 6–7 (Page ID #983–84). Turning to the court-access claim, the district court found that Appellants had no right to access the audio recordings under the First Amendment. The district court also found that the Supreme Court's experience and logic test, discussed in detail below, did not compel granting access to the recordings because there is no tradition of public access to audio recordings, and "public access to an audio recording of a court proceeding does not play a significant positive role in the actual functioning of the court proceeding." *Id.* at 13 (Page ID #990). Appellants timely appealed. R. 99 (Notice of Appeal) (Page ID #999).

## II. DISCUSSION

The district court granted Appellees Mead and Hefferan's motion for judgment on the pleadings and Appellee Boyd's motion for summary judgment, and denied Appellants' motion for

summary judgment. R. 97 (Op. and Order Granting Defs. Mots. and Denying Pls. Mots. at 20) (Page ID #997). We review de novo the legal issues presented in these motions. *Engler v. Arnold*, 862 F.3d 571, 574 (6th Cir. 2017) (motion for judgment on the pleadings); *Schreiber v. Moe*, 596 F.3d 323, 329 (6th Cir. 2010) (motion for summary judgment). When reviewing a motion for judgment on the pleadings, we construe the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Engler*, 862 F.3d at 574–75. "To survive a Rule 12(c) motion, the 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 575 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted)). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Schreiber*, 596 F.3d at 329 (quoting *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611 (6th Cir. 2009)).

**A. Sovereign Immunity**

Before assessing Appellants' First Amendment argument, we must examine Mead's and Hefferan's attempt to invoke sovereign immunity. They claim that although the district court rejected this argument, we may still affirm the dismissal of the official-capacity claims on Eleventh Amendment grounds because the record supports such a dismissal. Mead & Hefferan Br. at 17 (citing *Allman v. Walmart, Inc.*, 967 F.3d 566, 575 (6th Cir. 2020)). This argument fails.

"Sovereign immunity protects states, as well as state officials sued in their official capacity for money damages, from suit in federal court." *Boler v. Earley*, 865 F.3d 391, 409–10 (6th Cir. 2017). "There are three exceptions to sovereign immunity: (1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states'

sovereign immunity, and (3) when the doctrine set forth in *Ex parte Young*, 209 U.S. 123 (1908), applies." *Id.* at 410. The first two exceptions clearly do not apply, but the third is relevant here.

"The exception set forth in *Ex parte Young* allows plaintiffs to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations, 'regardless of whether compliance might have an ancillary effect on the state treasury.'" *Id.* at 412 (quoting *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)). "An allegation of an on-going violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction." *Telespectrum, Inc. v. Pub. Serv. Comm'n of Ky.*, 227 F.3d 414, 419 (6th Cir. 2000) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997)).

"In determining whether the doctrine of *Ex parte Young* avoids a [sovereign immunity] bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Dubuc v. Mich. Bd. of L. Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)) (second alteration in original). Here, Appellants permissibly pursue prospective, not retroactive, relief. The district court found that Appellants sought "a declaratory judgment finding that the Antrim and Bay County Administrative Orders violate the First Amendment," along with "an injunction that would prevent Defendants from refusing to allow Plaintiffs from inspecting and making copies of the audio recordings." R. 97 (Op. and Order Granting Defs. Mots. and Denying Pls. Mots. at 7) (Page ID #984). The district court found that these forms of prospective relief fall within *Ex parte Young*'s exception to sovereign immunity. *Id.* We agree. Appellants' Second Amended Complaint requests an order

"enjoining Defendants from refusing the ability of Plaintiffs" to inspect and obtain copies of the audio recordings in their proceedings. R. 43 (Second Am. Compl. at ¶ 70) (Page ID #516).

Appellants do not fall into any of the traditional exceptions to *Ex parte Young*. They do not ask for monetary damages under the guise of restitution, *see Edelman v. Jordan*, 415 U.S. 651, 668 (1974), nor do they seek "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law," *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005) (en banc) (quoting *Papasan v. Allain*, 478 U.S. 265, 278 (1986) (alteration in original)). Instead, Appellants' "claims fit within the *Ex parte Young* exception to the extent that they relate to the ongoing" withholding of the audio recordings from their trials "and they seek prospective relief aimed at stopping this alleged violation." *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 417 (6th Cir. 2019).

Resisting this conclusion, Appellees Mead and Hefferan argue that Appellants' requested relief is the "functional equivalent" of negating Michigan's sovereign interests. Appellees rely primarily on *Idaho v. Coeur d'Alene Tribe of Idaho* for this proposition. There, a Native American Tribe sued Idaho, "[a]lleging ownership in the submerged lands and bed of Lake Coeur d'Alene and of the various navigable rivers and streams that form part of its water system." *Coeur d'Alene*, 521 U.S. at 264. The Tribe sought a declaratory judgment establishing both the Tribe's entitlement to the exclusive use and occupation of the disputed territory and the invalidity of all Idaho laws regulating the relevant area, as well as an injunction preventing Idaho from interfering with its rights in the submerged lands. *Id.* at 264–65.

The Supreme Court held that the suit "was barred by [sovereign immunity] because it amounted to the 'functional equivalent of a quiet title action which implicates special sovereignty

interests.'" *Hamilton v. Myers*, 281 F.3d 520, 526 (6th Cir. 2002) (quoting *Coeur d'Alene*, 521 U.S. at 281)). The Court noted the "far-reaching and invasive" relief sought, which would result in "substantially all benefits of ownership and control [shifting] from the State to the Tribe." *Coeur d'Alene*, 521 U.S. at 282. "Under these particular and special circumstances," in which "Idaho's sovereign interest in its lands and waters would be affected in a degree fully as intrusive as almost any conceivable retroactive levy upon funds in its Treasury," the Court held that the Tribe's request for prospective declaratory and injunctive relief did not fall within the *Ex parte Young* exception. *Id.* at 287.

This circuit has generally cabined *Coeur d'Alene*'s application to cases involving quite similar facts. To this end, we have explained that *Coeur d'Alene* bars suits only when a plaintiff presents "a functional equivalent of a quiet title action implicating special sovereignty interests." *Arnett v. Myers*, 281 F.3d 552, 567 (6th Cir. 2002); *see also Dubuc*, 342 F.3d at 617 (explaining that state officials' "reliance on *Coeur d'Alene* is unavailing because the present lawsuit is not the functional equivalent of a quiet title action that implicates a state's sovereign interest in its lands or waters").

We will not break from this tradition of reading *Coeur d'Alene* narrowly. Because Appellants seek prospective injunctive and declaratory relief and do not pursue the functional equivalent of a quiet-title action, the district court correctly rejected the proposed application of sovereign immunity.

**B. Access to Courts**

"The First Amendment protects the constitutional right to access criminal trials." *United States v. DeJournett*, 817 F.3d 479, 484 (6th Cir. 2016). We have applied this right to civil trials

as well. *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695 n.11 (6th Cir. 2002); *see also id.* at 695 (listing other non-criminal contexts in which courts have held that the First Amendment right of access applies). We have also "further extended [the right] beyond hearings and meetings to determine whether there is a First Amendment right of access to documents and other materials." *In re Search of Fair Fin.*, 692 F.3d 424, 429–30 (6th Cir. 2012).

This right of access "is grounded generally in a 'purpose of assuring freedom of communication on matters relating to the functioning of government.'" *Id.* at 429 (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980)). "This right attaches when two 'complementary considerations' are met: (1) the place and process have 'historically been open to the press and general public'; and (2) 'public access plays a significant positive role in the functioning of the particular process in question.'" *DeJournett*, 817 F.3d at 484 (quoting *Press-Enterprise Co. v. Superior Ct.* (*Press-Enterprise II*), 478 U.S. 1, 8 (1986)). This is known as the "experience and logic" test. *In re Search of Fair Fin.*, 692 F.3d at 429.

"Once the First Amendment right of access attaches, it can 'be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *DeJournett*, 817 F.3d at 484 (quoting *Press-Enterprise Co. v. Superior Ct.* (*Press-Enterprise I*), 464 U.S. 501, 510 (1984)). "The interest [justifying closure] is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* (quoting *Press-Enterprise I*, 464 U.S. at 510).

Our precedent, therefore, compels us to consider two questions: Is the public disclosure of audio recordings of court proceedings mandated by the First Amendment under the experience and

logic test? And, if so, did the local courts make "findings specific enough that a reviewing court can determine whether the closure order was properly entered"? *Press-Enterprise I*, 464 U.S. at 510. In other words, before we can consider whether these Michigan courts justified their decisions with specific findings, we must first consider whether experience and logic demonstrate a First Amendment right of access to audio recordings when a party already can attend a trial and receive a transcript of proceedings. *See DeJournett*, 817 F.3d at 484.

As concerns experience, evaluating whether a process has "historically been open to the press and general public" requires a consideration of relevant history. *See Press-Enterprise II*, 478 U.S. at 8. This is no simple task. Of course, as the district court noted, "audio recording devices had not yet been invented when this country adopted the First Amendment." R. 97 (Op. and Order Granting Defs. Mots. and Den. Pls. Mots. at 13) (Page ID #990). That does not settle the matter, however. Courts often consider historical analogues when applying well-established doctrines to novel technologies. *See, e.g.*, *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 795–98 (2011) (video games); *United States v. Jones*, 565 U.S. 400, 404–05 (2012) (GPS tracking). The Supreme Court recently confirmed that, in this search for analogues, courts should not "resolve historical questions in the abstract," but rather may "follow the principle of party presentation" and "decide a case based on the historical record compiled by the parties." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2130 n.6 (2022) (second quote quoting *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020)).

Unfortunately, the parties have compiled no such record on which we can decide this case. Indeed, Appellants have not provided any argument on a relevant tradition of openness. For our part, we have found no case establishing the historical availability of audio recordings of court

proceedings when a party can attend a trial, receive a transcript, and request the right to record the proceedings themselves. We are not the only court to come back empty-handed in this regard. *See Commonwealth v. Winfield*, 985 N.E.2d 86, 91 (Mass. 2013). Instead of conducting an amateur historical inquiry, we leave the analysis for another day and a fuller record.

We similarly cannot fully assess the logic prong on this briefing, because Appellants have provided no relevant argument on this point either. One could imagine an argument that furnishing audio recordings, in addition to the forms of access already made available, could play a "significant positive role" in these types of court proceedings. *Press-Enterprise II*, 478 U.S. at 8. For example, audio recordings could reveal the demeanor of a judge or party, adding valuable context to a "sterile paper record." *United States v. Hoff*, 767 F. App'x 614, 622 (6th Cir. 2019); *see also United States v. Mitchell*, 59 F. App'x 701, 702 (6th Cir. 2003) (per curiam); Chance Cochran, Note, *Hear No Evil: How Permissive Rules on the Creation and Use of Courtroom Audio Recordings Can Increase Judicial Accountability*, 33 Geo. J. Legal Ethics 423, 429–30 (2020). Audio recordings could also reveal errors in the transcript—indeed, allegations of this sort gave rise to this case. At the same time, one could conclude that when a party receives multiple forms of access to a trial, a third form of access does not play "a particularly significant positive role in the actual functioning of the process." *Press-Enterprise II*, 478 U.S. at 11. Appellants' failure to "frame the issues for decision" thus makes it difficult for us to decide between these two positions. *Greenlaw v. United States*, 554 U.S. 237, 243 (2008).

Instead of engaging with the relevant legal test detailed above, Appellants argue that the local courts must provide them their requested audio recordings because Michigan law labels them as "court records." Appellants Br. at 18–20; Reply Br. at 1–2. Their argument proceeds as follows:

courts have held that the First Amendment gives a right to access court documents. Appellants Br. at 15–16 (citing, inter alia, *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177 (6th Cir. 1983); *Tri-Cnty. Wholesale Distribs., Inc. v. Wine Grp., Inc.*, 565 F. App'x 477, 490 (6th Cir. 2012) (Gwin, J., concurring)). The Michigan Rules of Court refer to audio recordings as "court records." Mich. Ct. Rule 8.119(F). Therefore, "Michigan law has already legislated the answer," and the First Amendment grants a right of access to the audio recordings. Appellants Br. at 19–20.

Appellants next reason that, because the First Amendment grants a right of access to these audio recordings, the local courts were required to make "findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest" in order to restrict access to the recordings, which did not happen. *Press-Enterprise I*, 464 U.S. at 510; *see* Appellants Br. 18–19. Because Michigan's Rules of Court allow local courts to impose "a total ban on all access" to audio recordings, Appellants Br. at 24 n.10 (emphasis deleted), Appellants conclude that we must reverse the district court, *id.* at 24.

This argument fails. The label that a state places on a particular document is not dispositive for the First Amendment's purposes; rather, the Supreme Court has instructed courts to look to "experience and logic" in determining whether a given set of materials is subject to a First Amendment right of access. *Press-Enterprise II*, 478 U.S. at 9. Appellants' caselaw is not to the contrary. Statements such as "[t]hroughout our history, the open courtroom has been a fundamental feature of the American judicial system," *Brown & Williamson*, 710 F.2d at 1177, show the importance of court access in general, but they do not let us skip over the First Amendment inquiry. Rather, the entirety of Appellants' argument fails to mention the "experience

and logic" test. Failing to advance a "cogent argument" explaining how the district court erred here in its interpretation of the governing test "constitutes abandonment." *Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016). As a result, we need not consider whether these local courts entered findings sufficient to support their bans on providing audio recordings, because Appellants have not shown that they had a First Amendment right to access the recordings to begin with.

In sum, Appellants have failed to present any argument as to the relevant legal test. These Appellants therefore have not shown a violation of First Amendment guarantees under the circumstances of this case.

## III. CONCLUSION

We **AFFIRM** the judgment of the district court.